**OLD FARMS OWNERS ASSOCIATION, INC. and Susan C. Lee, Trustee of the Trust Created Under Article IV of the Will of Katherine P. Barnhart, Deceased, Petitioners,**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT, et al., Respondent.**

No. 07–0924.

Supreme Court of Texas.

Feb. 13, 2009.

Thomas A. Zabel, Leslie A. Hipp, Zabel Freeman, L.L.P., Justin Whitley, Burns Wooley Marseglia & Zabel, LLP, Houston, for petitioners.

Jose Padilla, Linebarger, Goggan, Blair & Sampson, El Paso, Sipra Syngal, Daughtry & Jordan PC, Pankaj R. Parmar, Linebarger, Goggan, Blair & Sampson, LLP, Houston, for respondent.

Stephen A. Kuntz, Fulbright & Jaworski L.L.P., Houston, for other.

PER CURIAM.

In this tax delinquency suit, we decide whether the 2001 amendments to section 33.04 of the Tax Code apply to a case originally filed in 1999, nonsuited, and then refiled in 2002. We hold that the amendments do not apply in this instance and, therefore, reverse the court of appeals and reinstate the trial court's judgment.

Respondents, multiple taxing units in the Harris County and Houston area ("Taxing Units"), sued Susan C. Lee, the trustee of a trust created under the will of Katherine P. Barnhart ("the Trust") for delinquent property taxes on a 4.3174 acre tract of land.[1] The Trust was the record owner of this tract in 1996, when the Harris County Appraisal District's (HCAD) records listed the Trust's address as 1706 Post Oak Boulevard, an address maintained since 1993. In 1997, the Trust sold 4.2565 of the 4.3174 acres to Westheimer Old Farms I, leaving the Trust with only 0.0609 acres. Because the Trust still retained the full 4.3174 acres on the record date for purposes of property tax assessments in 1997, the entire tax bill for that year was to be mailed to the Trust. *See* TEX. TAX CODE §§ 22.01, 25.02, 32.07. However, after the sale but before the 1997 tax bill was mailed, HCAD unilaterally changed its records to list the Trust's address as 4550 Post Oak Boulevard, an address the Trust had last maintained ten years earlier. It is unclear exactly why HCAD reverted back to an old address, but nothing in the record suggests that the Trust requested the change. At any rate, the Taxing Units sent the 1997 tax bill to the old 4550 Post Oak Boulevard address, and it was returned as "undeliverable." The Trust subsequently failed to pay the 1997 taxes.

In 1999, HCAD discovered and corrected the address error to reflect the Trust's actual address. The Taxing Units then sued the Trust for the unpaid 1997 taxes. However, for reasons that are unclear in the record, the Taxing Units nonsuited the case in 2000.[2] The case was then refiled in 2002, at which time the Taxing Units sought to recover $51,211.78 in unpaid taxes, along with penalties and interest on those taxes of $44,194.75.

On November 4, 2003, a trial was held before a tax master. *See* TEX. TAX CODE tit. I, subtit. E, Ch. 33, subch. D (providing for the use of a tax master in tax delinquency cases). At trial, the Trust did not dispute the Taxing Units' entitlement to the underlying taxes. However, the Trust did dispute the Taxing Units' entitlement to the interest and penalties on those taxes on two alternative grounds: (1) because the Taxing Units delivered the Trust's 1997 tax bill to the wrong address, the tax never became delinquent, and penalties and interest could never begin to accrue; and (2) even if the tax was delinquent, the penalties and interest were waived because the Taxing Units failed to deliver the statutorily mandated five-year notice of delinquent taxes in 2000. *See* TEX. TAX CODE

---

1. The Taxing Units also sued Old Farms Owners Association, Inc. and Westheimer Old Farms I, Ltd. The Taxing Units sued these parties because they were the subsequent property owners after it was sold in 1997, the same year as the delinquent property tax bill at issue. The trial court assessed the 1997 taxes and apportioned them among the parties in accordance with the sales contract.

2. It appears, though it is not entirely clear from the record, that the Taxing Units and the Trust resolved the back taxes from 1997 as to the 0.0609 acres, but not for the remaining 4.2565 acres that were sold in 1997.

§ 33.04(b), (c) (repealed 2001). The tax master found that the Taxing Units did not deliver the 1997 tax statement to the Trust,[3] and that the Taxing Units also failed to deliver the required five-year delinquency notice to the Trust in 2000. Based on these findings, the tax master concluded that, while the Taxing Units could recover the base amount of these taxes, it could not recover interest and penalties on those taxes. The district court upheld this decision. *See* TEX. TAX CODE § 33.74 (providing for appeal of tax master's findings to trial court).

A divided court of appeals reversed the district court's judgment on both grounds. 236 S.W.3d at 384. The court of appeals concluded that, under the Tax Code, a taxing unit is required to mail the tax bill to the address provided by the appraisal district. Because the evidence demonstrated that the Taxing Unit mailed the bill to the address provided by HCAD, the court of appeals held that the Taxing Unit had complied with the statute, despite the fact that it had mailed to bill to the incorrect address. With regard to the five-year delinquency notice, the court of appeals held that the Trust was not eligible for a waiver of penalties and interest because that Tax Code provision was no longer in effect and the new law applied retroactively to deprive the Trust of the pre-existing waiver. *Id.* at 381–82. The court of appeals held that a savings clause accompanying the 2001 repealing legislation did not apply to the Trust's case. *Id.* On appeal, the Trust argues that the court of appeals erred and that the trial court's judgment should be reinstated. We agree.

Section 33.04 of the Tax Code, as it existed in 1999, states, in relevant part:

Notice of Delinquency.

(b) In addition to [a yearly notice], the tax collector for each taxing unit in each year divisible by five shall deliver by mail a written notice of delinquency to each person who owes a tax that has been delinquent more than one year and whose name and mailing address are known to the collector or can be determined by the exercise of reasonable diligence. . . .

(c) Penalties and interest on a tax delinquent more than five years or a multiple of five years are cancelled and may not be collected if the collector has not delivered the notice required by Subsection (b) of this section in each year that is divisible by five following the date on which the tax first became delinquent for one year.

Act of Jun. 14, 1985, 69th Leg., R.S., ch. 761, § 1, 1985 Tex. Gen. Laws 2600, 2601. The tax master found, and the record demonstrates, that the required five-year notice was not delivered to the Trust as required in 2000. Thus, under former section 33.04(c), penalties and interest on the 1997 taxes are waived. However, section 33.04 was amended in 2001 to remove the five-year notice requirement and the associated penalty and interest waiver provision.[4] But the 2001 legislation included a savings clause that continued the notice and waiver provisions in some cases:

Section 33.04, Tax Code, as amended by this Act, does not apply to **taxes subject to a delinquent tax suit pending be-**

---

**3.** The Tax Master also found that the Trust did not receive statements from 1998–2001. Because the Trust was not record owner on most of the property following 1997, the 1998–2001 statements were for small amounts of no more than $3.03. *See* TEX. TAX CODE § 31.01(f) (providing that a tax bill need only be mailed once the total accrues to fifteen dollars). Thus, the dispute centers on the 1997 statement.

**4.** Act of June 17, 2001, 77th Leg., R.S., ch. 1430, § 11, 2001 Tex. Gen. Laws 5109, 5112.

fore the effective date of this Act. Section 33.04, Tax Code, as amended by this Act, applies to all other taxes that became delinquent before the effective date of this Act or that become delinquent on or after that date. Penalties and interest on a delinquent tax are not canceled under Section 33.04, Tax Code, for failure to deliver any notice under that section as it existed immediately before the effective date of this Act. A delinquent tax that is the **subject of a collection suit filed before the effective date of this Act** is governed by Section 33.04, Tax Code, as that section existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose.

Act of Jun. 17, 2001, 77th Leg., R.S., ch. 1430, § 40, 2001 Tex. Gen. Laws 5109, 5122 (emphasis added). The second and third sentences of this clause clearly remove any penalty on the part of the Taxing Units for failure to provide the five-year notice in the past in many cases. But the parties dispute the meaning of the first and last sentences, which do exempt some cases. This is because the delinquency suit was originally filed in 1999, nonsuited, then refiled in 2002 following the amendments. Both the first and last sentence support the Trust's argument that the former waiver provisions should apply to its case. The first sentence of the clause states that the amendment "does not apply to taxes subject to a delinquent tax suit *pending before* [September 1, 2001]." *Id.* (emphasis added). Although the 1999 case was nonsuited, it was a suit that was pending *before* September 1, 2001. Additionally, the Trust's delinquent tax was "the subject of a collection suit filed before the effective date of [the legislation]," as discussed in the last sentence of the clause. *Id.* Although the 1999 suit ended in a nonsuit, that does not change the fact that it was a

collection suit filed before the effective date of the legislation.

We have held "a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought." *Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex. 1962). We do not modify that rule today, but we do recognize that this savings clause is broad enough to apply to any collection suit filed prior to the revisions in the law, even if the suit was eventually nonsuited. This must be so because, otherwise, the last sentence of the savings clause would have no meaning. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex.2000) (refusing to presume that the Legislature intended a redundancy); *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987) (noting that we must give effect to all a statute's words). As noted by the dissent in the court of appeals, "[t]he savings clause cannot be reasonably read to bar the prosecution only of suits taxing authorities had prosecuted to *completion* under prior law because these suits were *already* barred by the law of *res judicata*." 236 S.W.3d at 388 (Keyes, J. dissenting) (emphasis in original). The Taxing Units argue that it is possible the last sentence was meant to apply to cases such as those that reach judgment, those pending appeal, or those disposed of for want of prosecution. But this clause could not have been intended to apply to a case disposed of due to judgment or one pending appeal because those cases would have already applied the statute in effect at the time of trial. And as to those cases dismissed for want of prosecution, we agree that this clause would apply to them, as long as they were dismissed without prejudice, in which case they are treated the same as a nonsuit. *See Crofts*, 362 S.W.2d at 104; *Webb v. Jorns*, 488

S.W.2d 407, 409 (Tex.1972). There is no indication that the Legislature intended to include a dismissal for want of prosecution under this clause, but not a nonsuit.

The Taxing Units also argue that the clause's last sentence acts as an instruction as to whether to apply the 1985 version of the section 33.04,[5] which treated the waiver as mandatory, or the 1999 version of the statute, which treated the waiver as an affirmative defense.[6] We do not see this instruction in the savings clause. Regardless, penalties and interest would not be recoverable under either version.

For these reasons, we reverse the court of appeals, and reinstate the trial court's judgment.[7]

5. See Act of Jun. 14, 1985, 69th Leg., R.S., ch. 761, § 1, 1985 Tex. Gen. Laws 2600, 2601.

6. See Act of Jun. 19, 1999, 76th Leg., R.S., ch. 1481, § 16, 1999 Tex. Gen. Laws 5097, 5101.

7. Because we hold that the interest and penalties are waived under former section 33.04, we do not consider whether they are waived due to the Taxing Units' failure to deliver the 1997 tax bill to the Trust's correct address.